**\*E-Filed 09/24/10\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

KUANG-BAO P. OU-YOUNG,

       Plaintiff,

  v.

JOHN E. POTTER, UNITED STATES POSTMASTER GENERAL,

       Defendant.
_____/

No. C 10-00464 RS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

I. INTRODUCTION

Plaintiff, Kuang-Bao P. Ou-Young, is a former employee of the United States Postal Service ("USPS") and has brought various claims against the Postmaster General for conduct he believes amounted to discrimination based on his race. Plaintiff is pursing this claim pro se. Ou-Young filed his initial Complaint on February 2, 2010, while he was still employed by USPS. He then filed a First Amended Complaint on June 11, 2010. Without leave of this Court or pursuant to any stipulation of the parties, Ou-Young filed a Second Amended Complaint on August 9, 2010. Defendant filed this Motion to Dismiss plaintiff's FAC on July 19, 2010. In its reply brief, defendant asked the Court to ignore plaintiff's SAC, because plaintiff filed it in violation of Rule 15

No. C 10-00464
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  of the Federal Rules of Civil Procedure. This matter was submitted without oral argument, pursuant
2  to Civil Local Rule 7-1(b). For the reasons stated below, defendant's motion shall be GRANTED.
3  While plaintiff was not authorized to file an SAC, in the event he can in good faith amend his
4  complaint consistent with this order he may make such amendments to his proposed SAC.

## II. FACTS

Plaintiff was employed as a maintenance mechanic at a Distribution Center for the USPS from April 2007 through August 11, 2010. On May 18, 2009, plaintiff attempted to repair a malfunctioning machine, but the repair was unsuccessful. The acting operation supervisor, Ranvir Jhaj, knew of plaintiff's failed attempt and allegedly shouted at him. Plaintiff confronted Jhaj about the shouting incident, but Jhaj, plaintiff claims, did not want to discuss it. When Jhaj was next scheduled as acting supervisor for plaintiff's shift on May 22, 2009, Ou-Young took a seven-day sick leave due to what he describes as "severe mental stress."

When Ou-Young returned to work on May 29, his supervisor, Charles Swanner, questioned him about an email Swanner received which complained that Ou-Young had fallen asleep while on duty. In June of 2009, Ou-Young failed to repair a mail-sorting machine, and Swanner blamed him for the delay that occurred as a result of the failed repair. Subsequently, plaintiff filed two written complaints with the Equal Employment Opportunity (EEO). The first related to the shouting incident with Jhaj, and the second focused on the individual who authored the email.

On July 6, 2009, Ou-Young obtained pre-complaint counseling through the EEO. At that time, he spoke to an EEO Alternative Dispute Resolution Specialist, Silver Ishmael, who asked him if he would be willing to participate in mediation to resolve the conflict with Jhaj. Plaintiff declined to participate. After the interactions with supervisor Swanner and the discussion with Ishmael, plaintiff claims he experienced "tremendous mental stress" and took another three-day sick leave from work. When Ou-Young returned to work, he gave USPS managers written complaints that claimed he was being harassed by his fellow employees, and accused USPS supervisors of conspiracy. Ou-Young discussed his concerns with USPS personnel and a union representative.

On July 20, 2009, plaintiff received a notice from Ishmael, asking him to state a basis for his claims against Jhaj, and encouraging him to attend a mediation. Ou-Young responded to the letter, but stated that he declined to state a basis for his claim. The EEO dismissed Ou-Young's complaint, and sent him a Notice of Right to File on September 22, 2009. Plaintiff filed a formal complaint with the EEO on October 6, 2009. The EEO found that he had not sufficiently demonstrated a loss relating to employment, and dismissed his complaint for failure to state a claim under 29 C.F.R. § 1614.107(a)(1).

On November 16, 2009, plaintiff discussed the dismissal with USPS Manager of Maintenance Operations, Alejandro Vasquez, and requested administrative leave. When Jhaj was assigned to serve as acting supervisor in November, plaintiff took sick leave. On November 18, 2009, USPS denied plaintiff's request for administrative leave, finding that the rationale for his request was not covered by USPS' administrative leave policies. Additionally, plaintiff was asked to provide a doctor's note explaining his sick leave requests. He did not submit such a note.

On March 1, 2010, plaintiff was again unable to repair a machine, and was again blamed for the subsequent delay in operations. As a result of this incident, plaintiff filed a second informal complaint with the EEO on March 8, 2010, this time complaining of harassment. Vasquez met with Ou-Young to discuss this matter, but took no further action.

Plaintiff filed a number of sick leave requests for various days in March and April of 2010. Supervisor Leon Guerrero told Ou-Young that his requests would be approved if he submitted a doctor's note providing a reason. Plaintiff failed to do so. Subsequently, Leon-Guerrero sent Ou-Young a letter of warning for "failure to follow instruction" and for failure to "furnish required documents." Plaintiff replied to Leon-Guerrero's letter, and then requested administrative leave from April 17, 2010 through April 23, 2010. Plaintiff later requested additional administrative leave from May 1 through May 7 of 2010.

On April 5, 2010, plaintiff asked for pre-complaint counseling with the National EEO Investigative Services Office ("NEEOISO"), in which he alleged retaliation for his 2009 EEO complaint, and race-based discrimination. He argued that the was discriminated against because he

is not, like many of the Postal Service employees with whom he works, South Asian. Plaintiff received a Notice of Right to File from NEEOISO, and subsequently filed a formal EEO complaint on May 4, 2010. The complaint addressed the March 1 and 8, 2010 incidents (relating to plaintiff's failure to repair a machine) as well as the April 10, 2010 letter from Leon-Guerrero. NEEOISO dismissed plaintiff's complaint on June 15, 2010.

Plaintiff received a Notice of Removal from USPS employment on July 14, 2010. The notice explained that Ou-Young's removal was based on extended absence without official leave, irregular and unsatisfactory attendance, failure to report for duty as scheduled and required, and failure to follow instructions. After the defendants filed the instant Motion, plaintiff filed a "Second Amended Employment Discrimination Complaint," which included information relating to his removal in July.

Defendant's motion challenges plaintiff's allegations on three grounds. First, defendant argues this Court lacks subject matter jurisdiction to hear plaintiff's claims. Defendant also argues that the Complaint cannot survive a motion to dismiss because it fails to state a cognizable claim for employment discrimination, retaliation, or a hostile work environment. Additionally, even if the Court were to address plaintiff's SAC, defendant maintains that Title VII provides the exclusive remedy for all plaintiff's employment claims.

### III. DISCUSSION

A. <u>Plaintiff's Second Amended Complaint</u>

Defendant asks the Court to ignore plaintiff's SAC because it was not proper under Rule 15 of the Federal Rules of Civil Procedure. Rule 15 permits a party to amend a pleading without leave from the Court once as a matter of course either twenty one days after it is served, or if the pleading is one to which a responsive pleading is required 21 days after service of such responsive pleading or Rule 12 motion, whichever is earlier. Fed. R. Civ. P. 15(a)(1). Subsequently, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 advises the court to "freely give leave when justice so requires." *Id*.

The Supreme Court has instructed that "lower federal courts [should] heed carefully to the command of Rule 15(a), by freely granting leave to amend when justice so requires." *Howrey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (*citing Foman v. Davis,* 371 U.S. 178 (1962); *United States v. Hougham*, 364 U.S. 310 (1960)). The policy of granting leave to amend "is applied even more liberally to pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987). *See also Karim-Panahi v. Los Angeles Police Dept*, 839 F.2d 621, 623 (9th Cir. 1988) ("[in] civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt"). When considering whether to grant leave, the Court weighs several factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)) (internal quotation marks omitted).

Ou-Young did not formally seek leave to amend from this Court, or obtain written consent from defense counsel. In light of Ou-Young's pro se status, however, his failure properly to seek leave to amend can be excused. As a practical matter, had Ou-Young formally requested leave to amend the Complaint, the factors articulated in *Eminence Capital* likely would have warranted amendment. Accordingly, the Court will consider plaintiff's SAC.

B.   Additional Claims in the Second Amended Complaint

The SAC adds a description of the events surrounding his removal from the USPS, and alleges several additional claims against defendants. In addition to the Title VII claim, the SAC also includes several additional claims for relief: (1) violation of 42 U.S.C. § 1981; (2) conspiracy in violation of 18 U.S.C. § 371; (3) knowingly making false statements in violation of 18 U.S.C. § 1001; (4) killing or attempting to kill someone with the intent to prevent the production of a record or document in an official proceeding in violation of 18 U.S.C. § 1512(b); (5) making harassing telephone calls in violation of 47 U.S.C. § 223; and (6) violation of the Fifth Amendment.

Title VII in its original form did not provide a remedy for a federal employee alleging job-related racial discrimination, but Congress amended the statute in 1972 to include federal employees. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976); 42 U.S.C. § 2000e. In *Brown*, the Supreme Court addressed whether a federal employee could assert a claim against his employer for race discrimination under both Title VII and section 1981 of the Civil Rights Act. *Id*. at 823-24. The Court affirmed the trial court's dismissal of the complaint, and held that the 1972 amendment transformed Title VII into "the exclusive judicial remedy for claims of discrimination in federal employment." *Id*. at 835. *See also Boyd v. USPS*, 752 F.2d 410, 413-14 (9th Cir. 1985) (holding that Title VII is the exclusive remedy for a former USPS employee alleging discrimination by the federal government on the basis of race, religion, gender, or national origin).

The Ninth Circuit has emphasized that Title VII "does not preclude separate remedies for unconstitutional action other than discrimination based on race, sex, religion or national origin." *White v. Gen. Servs. Admin.*, 652 F.2d 913, 917 (9th Cir. 1981) (*citing Carlson v. Green*, 466 U.S. 14, 23 (1980), *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971)). As the Court explained in *Otto v. Heckler*, "torts which constitute 'highly personal violation[s] beyond the meaning of discrimination [are] separately actionable.'" 781 F.2d 754, 757 (9th Cir. 1986) (*quoting Stewart v. Thomas*, 538 F. Supp. 891, 895 (D.D.C. 1982)). The remedy "for unconstitutional actions other than employment discrimination, even if arising from the same core of facts, is not barred by Title VII." *Arnold v. United States*, 816 F.2d 1306, 1311 (9th Cir. 1987) (citing *Otto*, 781 F.2d at 756-57)). When the harm suffered by a federal employee "involve[s] something more than discrimination, the victim can bring a separate claim." *Brock v. U.S.*, 64 F.3d 1421, 1423-24 (9th Cir. 1995) (citing *Otto*, 781 F.2d at 756-57)) (concluding that a Forest Service employee who was raped by a coworker suffered a highly personal violation, and could bring a separate Federal Tort Claims Act claim for negligence in addition to a Title VII claim for sex-based discrimination). When the factual predicate of a federal employee's constitutional claim is the same as that behind the employee's Title VII claim, however, the holding of *Brown* controls and only the Title VII remedy is available. *Nolan v. Cleland*, 686 F.2d 806, 815 (9th Cir. 1982) (affirming dismissal of a

federal employee's due process claim against Veterans' Administration where it arose from same factual predicate as her Title VII, wrongful termination claim).

The additional claims in the SAC, are based upon the allegedly discriminatory employment actions by USPS employees, and therefore are factually indistinguishable from his Title VII claims. The SAC does not indicate that plaintiff experienced "highly personal" violations or anything separate and apart from his discrimination allegations. Accordingly, as a federal employee, Title VII provides Ou-Young's exclusive remedy, *Boyd*, 752 F.2d at 413-14,[1] and he is precluded from bringing his additional claims, at least as they are currently pleaded.

C. Exhaustion of Administrative Remedies

The SAC alleges Ou-Young's termination from USPS was racially motivated, in violation of Title VII. If a federal employee believes he or she has suffered race-based discrimination, the employee must first seek relief from the agency that has allegedly discriminated against him or her. *Brown*, 425 U.S. at 1967; 29 C.F.R. § 1614.105(1). The relevant federal regulation provides that a USPS employee must initiate contact with an EEO Counselor within forty-five days of the allegedly discriminatory action. 29 C.F.R. § 1614.105. If the employee is dissatisfied with the EEO's decision, he or she may appeal to the Equal Employment Opportunity Commission, or file a complaint in a United States District Court. 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.110(b). For a federal court to have subject matter jurisdiction over a Title VII claim, a plaintiff like Ou-Young is required to exhaust his EEOC administrative remedies before seeking federal adjudication of his claims. *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). *See also Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 638 (9th Cir. 2002) (holding that in order to establish subject matter jurisdiction over a Title VII claim, plaintiff must first exhaust his administrative remedies); *Ross v. USPS*, 696 F.2d 720, 722 (9th Cir. 1983) (a former USPS employee alleging race discrimination could not bring an employment discrimination case in federal court before first exhausting internal remedies with the USPS).

---

[1] The fact that Ou-Young is no longer employed by USPS does not affect the viability of his claims, because they stem from conditions that arose while he was a federal employee. *See Lee v. Potter*, No. 07-254, 2008 U.S. Dist. LEXIS 76841, at *17 (N.D. Cal. Oct 1, 2008), *aff'd*, 358 Fed. Appx. 966 (9th Cir. 2009).

Ou-Young discussed the May 2009 and March 2010 incidents with an EEO Counselor. The March 2010 complaint is currently under review. The EEO dismissed Ou-Young's May 2009 complaint under 29 C.F.R. § 1614.107 for failure to state a claim. Ou-Young had not yet advanced a retaliation claim in May of 2009. Unavoidably, the discrimination claim alleged in the SAC centers on Ou-Young's termination. Clearly he has not yet pursued any administrative remedies relating to this latest turn of events. In order for the Court to have subject matter jurisdiction over Ou-Young's claims, he must first exhaust his administrative remedies. *See EEOC*, 31 F.3d at 899; *Ross*, 696 F.2d at 722. If he is dissatisfied with the agency's decision, he may either appeal to the EEOC, or file a Complaint with this Court. Until he has done so, this Court lacks subject matter jurisdiction and cannot hear his claims.

## IV.  CONCLUSION

Plaintiff's Complaint suffers from several procedural obstacles. As a federal employee alleging race discrimination, Title VII is plaintiff's exclusive remedy. Therefore, the additional causes of action in the SAC as currently pleaded cannot stand. Moreover, plaintiff must exhaust administrative remedies available to him within USPS before pursing his Title VII claim. Accordingly, defendant's Motion to Dismiss is granted with leave to amend, should he be able in good faith to advance any claims consistent with the terms of this order. If plaintiff elects to file an amended complaint, he must do so no later than Friday, October 29, 2010.

IT IS SO ORDERED.

Dated:

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**THIS IS TO CERTIFY THAT A HARD COPY OF THIS ORDER WAS MAILED TO:**

**Kuang-Bao P. Ou-Young**
1362 Wright Avenue
Sunnyvale, CA 94087

DATED: 09/24/10

/s/ Chambers Staff
Chambers of Judge Richard Seeborg

\* Counsel are responsible for distributing copies of this document to any co-counsel who have not registered with the Court's electronic filing system.

**United States District Court**
For the Northern District of California