*E-Filed 1/3/2011*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN ~~FRANCISCO~~ DIVISION
JOSE

KUANG-BAO OU-YOUNG,

Plaintiff,

v.

JOHN E. POTTER, UNITED STATES POSTMASTER GENERAL,

Defendant.

_____/

No. C 10-0464 RS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

The United States Postal Service ("USPS") moves to dismiss plaintiff Kuang-Bao Ou-Young's Third Amended Complaint ("TAC") for failure to state a claim for relief. Pursuant to an Order issued by this Court on September 24, 2010 dismissing Ou-Young's Second Amended Complaint ("SAC") in its entirety, Ou-Young has narrowed his claims to just three. He alleges that his former employer, USPS, violated Title VII when it discriminated against him on the basis of race, retaliated against him for engaging in conduct protected under the statute, and fostered a working environment hostile to a person of his race. This matter is appropriate for resolution without oral argument, pursuant to Civil Local Rule 7-1(b), and the hearing scheduled for January 6, 2011 is vacated. Ou-Young has pleaded facts sufficient to support a plausible discrimination and

retaliation claim and USPS's motion must be denied. He has not, however, in this iteration of his complaint or in the three others preceding it, pleaded a hostile work environment claim that is plausible on its face. As it is clear at this stage that further amendment would be futile, Ou-Young's hostile environment claim shall be dismissed without leave to amend. USPS's contention that Ou-Young's TAC includes excessive and irrelevant facts, as well as allegations Ou-Young concedes he has abandoned, is a valid one. Accordingly, the facts and abandoned legal claims identified by defendant will be deemed stricken.

## II.  RELEVANT FACTS

Plaintiff Ou-Young was employed as a maintenance mechanic at the San Jose Post Office from April of 2007 until August 11, 2010. Ou-Young filed two formal complaints—the first in October of 2009 and the second in May of 2010—with the Equal Employment Opportunity ("EEO") against his employer, detailing a series of interrelated events. Both were denied. The workplace conduct that informed those complaints is the subject of this lawsuit. The following factual description reflects a distillation of the Prior Order's more detailed factual section and clarifications or additions contained in Ou-Young's TAC.

On October 6, 2009, Ou-Young filed a formal complaint with the EEO against his plant manager Grewal, operation supervisors Noseworthy and Jhaj, and a maintenance supervisor, Carlos Swanner. The complaint discussed an incident in May of 2009 where supervisor Jhaj shouted at Ou-Young after he failed to repair a machine, alleged that Ou-Young was unfairly blamed for the failed repair and downtime, and discussed questioning Ou-Young received from his supervisors as to his work habits and whereabouts. On May 4, 2010, Ou-Young filed a second complaint, where he advanced allegations of continued harassment from his supervisors, described various interviews he attended to discuss his allegations, and discussed a letter he received reprimanding him for failing to follow instructions or explain work absences. The work absences relate largely to sick-leave Ou-Young took on various occasions due to the mental stress involved in working under specific supervisors. By the spring of 2010, Ou-Young's supervisors had begun to condition approval of Ou-Young's requests for sick or administrative leave on receipt of a physician's note.

**United States District Court**
For the Northern District of California

Ou-Young did not provide such a note, but claims the requirement was applied to him, but not to other employees. Encompassed within the timeframe covered by the second formal complaint are also two other occasions on which Ou-Young failed to make a timely, successful repair to a sorting machine and was blamed for the resulting downtime. He also asserts that on at least one of those occasions, another maintenance repair worker, Romy Pantaleon, also attempted but failed to make a repair. Ou-Young avers it was only he, and not Pantaleon, who was subsequently blamed.

Ou-Young received a Notice of Removal from USPS employment on July 14, 2010. The notice explained that Ou-Young's removal was based on extended absence without official leave, irregular and unsatisfactory attendance, failure to report for duty as scheduled, and failure to follow instructions. Although Ou-Young added this fact to his SAC, he had not yet pursued any administrative remedy to address his termination. In the Prior Order, this Court dismissed Ou-Young's SAC in its entirety, largely because it was not clear from the SAC whether or not Ou-Young had exhausted his administrative remedies.

### III.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8 of the Federal Rules of Civil Procedure further provides that to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The first part of this requirement—"a short and plain statement of the claim"—cannot be read without reference to the second part—"*showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). The Supreme Court has made clear that while "showing" an entitlement to relief does not require "detailed factual allegations," it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citations omitted).

No. C 10-0464 RS
ORDER

3

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the Supreme Court articulated two "working principles" behind its approach to Rule 8 notice pleading. First, the tenet a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

While a plaintiff in a Title VII employment discrimination case must comport with Rule 8's pleading requirements as refined in *Twombly* and *Iqbal*, this does not mean the plaintiff must *prove* its prima facie discrimination case at the pleading stage. *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (reversing dismissal of employment discrimination claim at pleading stage where district court found plaintiff failed to plead a *McDonnell Douglas* prima facie case). *See also Twombly*, 550 U.S. at 569-70 (acknowledging that, in light of *Swierkiewicz*, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"). This is because the *McDonnell Douglas* prima facie showing is an evidentiary standard, not a pleading requirement; it relates to an employee's burden of presenting evidence that raises an inference of discrimination. *Swierkiewicz*, 534 U.S. at 512-13. The question at the pleading stage is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. What the plaintiff must do is "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id. See also Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir. 2008) ("Even though heightened pleading is not required in discrimination cases, the complaint must still 'give the defendant fair notice . . . .'" (*quoting Swierkiewicz*, 534 U.S. at 512)). Even post *Twombly* and *Iqbal*, a plaintiff need not supply specific evidence adequate to withstand the four-part *McDonnell Douglas* test; what he or she *must* do is allege facts that state a facially plausible Title VII claim.

ORDER

4

## IV.  DISCUSSION

1. Exhaustion of Administrative Remedies

Although Ou-Young did aver that he filed frequent internal complaints alleging discriminatory harassment, retaliation, and a hostile work environment over the past two years, the Prior Order expressed concern over whether Ou-Young had properly exhausted his administrative remedies, particularly in light of his quite recent termination (which took place in July of 2010, several months after Ou-Young initiated this suit and mere weeks before he filed the SAC).  As the exhaustion requirement affects subject matter jurisdiction, the Court dismissed the SAC and instructed Ou-Young to pursue the appropriate administrative channels or clarify whether he had already done so.  "Under Title VII, a plaintiff must exhaust his or her administrative remedies by filing a timely charge with the EEOC, or the appropriate . . . agency, thereby affording the agency an opportunity to investigate the charge."  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (*citing* 42 U.S.C. § 2000e-5(b)).  "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'"  *Id.* (*quoting Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).

In the TAC, Ou-Young clarifies that he filed, and the EEO considered and rejected, two formal complaints.  There is still, of course, no allegation in the TAC that Ou-Young has brought his termination to the agency's attention.  USPS suggests this means the Court is free only to consider the pre-termination conduct discussed in the two earlier complaints.  As a practical matter, USPS points out that both complaints were denied before the termination took place and the agency could not have considered or investigated the circumstances surrounding it.  In the Ninth Circuit, "[i]ncidents of discrimination not included in an EEOC [or EEO] charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'"  *Green v. Los Angeles County Superintendent of Schs.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (*quoting Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir. 1984)).  When determining whether an allegation under Title VII is "like or

reasonably related" to allegations contained in a previous agency charge, "the court inquires whether the original EEOC investigation would have encompassed the additional charges." *Id.* at 1476 (*citing Kaplan v. Int'l Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators*, 525 F.2d 1354, 1359 n.3 (9th Cir. 1975)). Moreover, where "closely related incidents occur after a charge has been filed, additional investigative and conciliative efforts would be redundant," and "[t]o require a second 'filing' by the aggrieved party . . . would serve no purpose other than the creation of an additional procedural technicality.'" *Brown*, 732 F.2d at 729-30 (*quoting Ramirez v. Nat'l Distillers & Chem. Corp.*, 586 F.2d 1315, 1320 (9th Cir. 1978)). Finally, "[t]he remedial purpose of Title VII and the paucity of legal training among those whom it is designed to protect require charges filed before the EEOC to be construed liberally." *Id.* (*quoting Stache v. Int'l Union of Bricklayers and Allied Craftsmen*, 852 F.2d 1231, 1234 (9th Cir. 1988)).

Ou-Young characterizes the termination as merely a final example of the same discriminatory or retaliatory conduct of which he complained in both formal complaints. Aside from the actual act of termination, he does not advance any new theory or broaden the scope of his general employment discrimination claims. The facts surrounding his termination, then, are indeed "like or reasonably related" to the claims raised in the EEO charges. *B.K.B. v. Maui Police Dep't*, 276 F.3d at 1100. The termination fact is "new," but it is so intimately related to Ou-Young's theory of his case that it makes sense to consider it here, particularly where Ou-Young avers that the same conduct cited in his formal complaints caused or at least contributed to his termination.

2. Unlawful Discrimination on the Basis of Race

Defendant moves to dismiss Ou-Young's discrimination claim because it asserts he has not—and cannot—plead a plausible claim for relief. Specifically, defendant focuses on the events at the heart of Ou-Young's two formal EEO complaints.[1] As detailed above, the first complaint addressed the instance in May of 2009 where supervisor Jhaj shouted at Ou-Young after he failed to repair a machine, alleged that Ou-Young was unfairly blamed for the failed repair and downtime,

---

[1] Ou-Young included in his TAC the Final Agency Decisions issued by the EEO, and they may be considered here.

and discussed the questioning Ou-Young received from his supervisors as to his work habits and whereabouts. The second complaint detailed the later events, including Ou-Young's allegation of continued harassment from his supervisors, the interviews he attended to discuss his allegations, and a letter he received reprimanding him for failing to follow instructions or explain work absences.

While USPS acknowledges that Ou-Young need not produce evidence to support a prima facie showing of discrimination, it insists that Ou-Young must at least plead facts that plausibly suggest he can ultimately do so. Four elements comprise a *McDonnell Douglas* prima facie discrimination case: (1) a plaintiff is a member of a protected class; (2) a plaintiff performed his or her job satisfactorily; (3) a plaintiff suffered an adverse employment action; and (4) a plaintiff was treated less favorably than a similarly situated, non-protected employee. More specifically, defendant argues that Ou-Young has included facts in the TAC that make the second, third, and fourth elements implausible.

With regard to whether Ou-Young performed his job satisfactorily, USPS points out how Ou-Young concedes he was on several occasions unable to fix machinery, that he took multiple sick leaves without medical documentation, and that he continued to request and then take leave even when he knew his supervisors would ask for a physician's documentation. In this sense, defendant argues Ou-Young has actually included in his TAC a plausible explanation for why he was reprimanded and denied sick or administrative leave: he was an "idiosyncratic," sometimes "demanding" employee. In other words, defendant suggests the TAC itself demonstrates that Ou-Young had not performed his job satisfactorily. On the other hand, the TAC does not concede that the repair failures were Ou-Young's fault; indeed, he alleges the contrary. Moreover, Ou-Young's apparent refusal to provide a physician's explanation, while potentially problematic for him, does not foreclose his ability to present a prima facie case.

Next, USPS disputes whether or not Ou-Young suffered an adverse employment action. Because Ou-Young's termination, as discussed above, may be considered in this action, defendant's contention need not be addressed further. Moreover, even were termination not included, Ou-Young's averment that he was unfairly "blamed" for machinery beyond repair, and that his sick

leave was discriminatorily restricted may amount to a separate adverse employment action, depending upon the development of the factual record going forward.

Finally, defendant attacks the "similarly situated" employees referenced in Ou-Young's TAC as not similar at all. Individuals are similarly situated within the meaning of the *McDonnell Douglas* framework "when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). In his TAC, Ou-Young mentions Romy Pantaleon, who was also employed as a maintenance worker in the San Jose Post Office. On one occasion, both men were called to repair a machine, the repairs failed, and Ou-Young—but not Pantaleon—was blamed for the downtime. Defendant in its motion details certain facts that it suggests demonstrate why the singling out of Ou-Young was justified. Ou-Young in his opposition disagrees and offers an alternative factual explanation. As both are at least plausible, at the motion to dismiss phase, all inferences must flow to the benefit of the complaint.

Defendant's argument, in other words, would require a weighing of the facts to an extent appropriate only at a later procedural juncture, such as summary judgment or trial. While it may be true that Ou-Young's discrimination claim ultimately lacks merit, and while it also may be true that a perfectly non-discriminatory reason underlies the USPS' approach to this employee, these are issues for another day. Viewing the totality of the alleged circumstances in the light most favorable to Ou-Young, the complaint advances "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *See also Johnson Riverside Healthcare System, LP*, 534 F.3d 1116, 1123-24 (9th Cir. 2008) ("Our notice pleading requirements do not require more. Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test.") (*quoting Swierkiewicz*, 534 U.S. at 515). Accordingly, defendant's motion to dismiss Ou-Young's discrimination claim must be denied.

3. Retaliation

Next, defendant contends Ou-Young has failed to state a plausible retaliation claim. Title VII prohibits retaliation against an employee for opposing any practice made unlawful under the Title or for participating in any stage of administrative or judicial proceedings under the statute. 42

U.S.C. § 2000e-3; 29 C.F.R. § 1614.101(b). To state a retaliation claim, a plaintiff must allege: (1) that the plaintiff engaged in a protected activity; (2) that the plaintiff suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). Defendant does not dispute that Ou-Young engaged in a protected activity and that he filed multiple complaints alleging harassment, discrimination and retaliation, not merely with the EEO but also internally with the San Jose Post Office. It is instead with the latter two elements that USPS takes issue. As explained above, however, Ou-Young has alleged facts sufficient to suggest that he plausibly experienced an adverse employment action. Similarly, while USPS argues the reprimands and refusals to approve leave time have legitimate, alternative explanations (*i.e.*, that Ou-Young deserved them), Ou-Young's TAC supplies enough facts to make his averment of retaliation at least plausible. He points out, for example, that Swanner blamed Ou-Young for downtime on the very same day Ou-Young began his pre-complaint counseling process relating to the May, 2009 incident with Jhaj. The close timing could suggest a causal connection. At this juncture, the Court cannot adopt defendant's analysis without making a decision that inevitably decides between two alternative interpretations of the same facts. Again, defendant's points are better raised at a later procedural phase.

4. Hostile Environment

Finally, USPS insists Ou-Young has not pleaded a viable, racially based hostile working environment claim. Such a claim based on race requires that a plaintiff show: (1) that he or she was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the employee's conditions of employment and create an abusive work environment. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993). Although Ou-Young need not support his allegations with evidence at the pleading stage, his complaint must nonetheless allege sufficient facts to state the elements of a hostile work environment claim. *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). Defendant argues that while Ou-Young may insist he suffered from unpleasant

workplace conduct on account of his job performance, he has utterly failed to plead facts that show he suffered abuse of a *racial* nature. As defendant correctly indicates, Rule 8 requires allegations plausibly suggestive of (not merely consistent with) racial animus. *See Johnson*, 534 F.3d at 1123 n.4. Ou-Young has not done this here. While he alleges that his supervisors yelled at him and blamed him for downtime on at least three occasions, and while he insists he was unfairly denied leave, the TAC as currently constructed fails to draw a plausible connection—or any connection— between his supervisors' conduct and racial animus. The closest Ou-Young's TAC comes is to mention his belief that, as a general matter, South-Asian employees received preferential treatment in the San Jose Post Office. That said, Ou-Young draws no other connection and includes no other facts from which the Court could plausibly connect his supervisors' behavior or comments to racial animus. In fact, there is nothing in the TAC to suggest his supervisors made *any* reference— inappropriate or innocuous—to race at all. Accordingly, defendant's motion to dismiss Ou-Young's hostile environment claim must be granted. As the TAC represents Ou-Young's *fourth* attempt to state a claim for relief, it is apparent that further amendment would be futile. Accordingly, defendant's motion to dismiss this claim is granted without leave to amend.

    5. Other Claims

    Defendant correctly points out that this Court in its Prior Order dismissed several claims raised in Ou-Young's SAC. Because these claims focused on the exact same conduct at the heart of Ou-Young's Title VII claim, the Order explained that Ou-Young is limited to bringing his claims under the latter statute. While Ou-Young affirms in both his TAC and his opposition motion that his are merely claims rising under Title VII, the TAC still contains these extraneous claims (although he does at least include them under headings that reference only Title VII). These include allegations of "false statements and concealment of evidence," "conspiracy and cover up," and any and all criminal allegations. Similarly, extraneous facts discussing the Postal Service's "history of workplace violence" do nothing more than distract from Ou-Young's Title VII claim. Accordingly, those averments as outlined in defendant's motion shall be deemed stricken from the TAC.

V. CONCLUSION

As explained above, Ou-Young's TAC states plausible claims of discrimination and retaliation. He has not pleaded facts plausibly supporting his hostile work environment claim and this claim shall therefore be dismissed with prejudice. All facts and legal claims extraneous to his Title VII claims shall be considered stricken from the TAC. USPS is instructed to answer Ou-Young's TAC within 21 days of this Order's issuance.

IT IS SO ORDERED.

Dated: 1/3/2011

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 10-0464 RS
ORDER

11

**THIS IS TO CERTIFY THAT A HARD COPY OF THIS ORDER WAS MAILED TO:**

Kuang-Bao P Ou-Young

1362 Wright Avenue

Sunnyvale, CA 94087

DATED: 1/3/2011

/s/ Chambers Staff

Chambers of Judge Richard Seeborg

No. C 10-0464 RS
ORDER

12